**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Leonard PELTIER, Defendant-Appellant.**

**No. 80–1095.**

United States Court of Appeals,
Ninth Circuit.

Submitted June 4, 1982.

Decided Nov. 23, 1982.

Bruce Ellison, Rapid City, S.D., for defendant-appellant.

Lourdes Baird, Asst. U.S. Atty., Los Angeles, Cal., argued, for plaintiff-appellee; Andera Sheridan Ordin, U.S. Atty., Los Angeles, Cal., on brief.

Before GOODWIN and ANDERSON, Circuit Judges, and GILLIAM *, District Judge.

PER CURIAM.

Leonard Peltier appeals his conviction of escape from a federal prison in violation of 18 U.S.C. § 751, and of being a felon in possession of a firearm in violation of 18 U.S.C.App. § 1202(a). Peltier contends that he was denied adequate cross-examination of a government witness, and that he was improperly restricted in presenting his theory of defense.

■ In an unpublished decision on March 20, 1981, we remanded for a new trial because of the trial court's restriction of the defendant's right to cross-examine a government witness. *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The government petitioned for rehearing. The memorandum of March 20, 1981, was withdrawn and the cause was remanded to the district court for the purpose of supplementing the record on the limited question whether the abbreviation of cross-examination was harmless error. Supplemental briefs were received. After reviewing the entire record of the trial and the supplemental materials filed by the government and by the defendant, we are satisfied that while the trial court appeared to have cut short the cross-examination of a witness without an adequate reason in the record for having done so, there was no prejudice to the defendant; and the supplemental materials made it clear that error was harmless beyond a reasonable doubt.

The trial judge refused in Peltier's case to permit cross-examination that would have shown bias on the part of an FBI agent against Peltier. Ordinarily, a defendant is always allowed to bring out facts tending to show bias or prejudice on the part of a prosecution witness. But in this case, the witness testified only to facts material to counts and defendants not involved in this appeal. Because the agent testified to nothing relevant to the case against Peltier, the denial of Peltier's right to show that the agent had reason to be biased against Peltier was harmless. Moreover, the facts from which an inference of bias against Peltier could have been drawn were brought out by other counsel, cross-examining on behalf of other defendants. *Cf. United States v. Willis,* 647 F.2d 54 (9th Cir.1981), where the denial of the right of cross-examination was prejudicial.

The record reveals a lengthy and abrasive contest between opposing counsel throughout the trial over the extent to which questions of witnesses were within or without the proper scope of cross-examination. The defense in Peltier's behalf attempted to bring up during cross-examination a wide range of issues that had not been addressed during the direct examination. The production of the government's evidence was prolonged by aggressive cross-examination, and the record reveals that at times the presiding judge felt it necessary to abbreviate the cross-examination. What originally appeared to be an undue restriction upon cross-examination turned out, upon the whole record, to be explainable in terms that are fully consistent with a fair trial and no ground for reversal is revealed.

A question not addressed in our original disposition remains. One of the theories of the defense was that the armed jail break was the product of duress. Peltier argued in effect that a jail break was his only possible response to his fear that the United States government had arranged to have him killed while in prison. Peltier's counsel made offers of proof *in camera* and filed affidavits about testimony that could be

---

* The Honorable Earl B. Gilliam, United States District Judge for the Southern District of California, sitting by designation.

expected if witnesses to be called were subpoenaed from prison. A substantial amount of colloquy was expended upon the defendant's theory that he was compelled to plan and execute an armed jail break as the only way to save his life from a "clear and present danger" of imminent assassination by agents of the government. We have examined all this material, and while it presents some close questions about materiality and relevancy, it does not measure up to probable cause to believe that any evidence exists that would justify an armed jail break pursuant to the defendant's theory.

Assuming for the purposes of this phase of the case that some reliable witness had been found who would have testified to facts that would cause a reasonable prisoner to fear for his life at the hands of agents of the United States, the proper course for a prisoner upon learning those facts would be to advise the warden, the prison counselors and any other counsel or friends on the inside or outside of the prison. A prisoner could make known his concerns and make an appropriate request for secure and safe custody until the factual situation could be sorted out.

█ Even if any part of the defendant's story were true, such facts would not present a lawful basis for participating in an armed jail break. Courts have established elements of proof for which a *prima facie* case is generally required to be shown before the defendant is entitled to an instruction on the defense of duress. *Cf. United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980); *People v. Unger,* 66 Ill.2d 333, 5 Ill.Dec. 848, 362 N.E.2d 319, 323 (1977); *State v. Baker,* 598 S.W.2d 540, (Mo.App.1980). The *prima facie* case for a defense of duress must show: (1) that the threat and fear which the threat caused were immediate and involved death or serious bodily injury (*see, e.g., United States v. Gordon,* 526 F.2d 406, 407 (9th Cir.1975)); (2) that the fear was well-grounded (*Id.*); (3) that there was no reasonable opportunity to avoid or escape the threatened harm (*Id.*); and (4) that the

defendant submitted to proper authorities after attaining a position of safety (*see, e.g., United States v. Michelson,* 559 F.2d 567, 570 (9th Cir.1977)).

█ In granting the government's motion *in limine,* the trial judge found Peltier's proof lacking. Peltier had to show that there was not a reasonable opportunity to avoid the perceived danger. Accordingly, the court committed no reversible error in refusing to allow the trial to be turned into an evaluation by the jury of competing horror stories. No imaginable set of circumstances could be drawn from the offers of proof to justify the armed jail break that took place.

Affirmed.