**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Irvin WILLIAMS, Ronald Gene Sears, Morris L. Johnson, Defendants-Appellants.**

Nos. 84–5177, 84–5178 and 84–5184.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1985.

Decided June 17, 1986.

James E. Berliner, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Donald Etra, Sidley & Austin, John P. Gyorgy, Deputy Federal Public Defender, Jay Lichtman, Los Angeles, Cal., for defendants-appellants.

Before FLETCHER, PREGERSON, and HALL, Circuit Judges.

PREGERSON, Circuit Judge.

Appellants Williams, Sears, and Johnson entered conditional pleas of guilty to the offense of escape from prison in violation of 18 U.S.C. § 751.[1] We affirm the district court's pretrial rulings in all but one respect. The district court erred in its pretrial ruling that defendant Johnson's offer of proof was insufficient to support a duress defense. Thus, we reverse appellant Johnson's conviction and remand to the district court for further proceedings to enable Johnson to present his duress defense at trial. We affirm the convictions of appellants Williams and Sears.

## FACTS

On October 22, 1983, six inmates, including appellants Williams, Johnson, and Sears, escaped from the United States Penitentiary at Lompoc, California by driving the prison garbage truck through the prison fence. A short distance from the fence, the truck, riddled by heavy gunfire from nearby guard towers, went out of control and collided with security roadblocks. One escapee died in the cab of the truck and the others were taken back into custody.

After arraignment, appellant Johnson filed several pretrial motions including: a Motion to Dismiss the Indictment Based On Unconscionable Government Conduct alleging that prison officials had advance knowledge of, and encouraged or assisted in, his escape; a Motion for Production of Evidence Favorable to Defendant; and a Motion for Disclosure of Informant Information. Appellants Sears and Williams joined in those motions. Sears also filed a separate Motion for Discovery. The district court denied all of these motions.

The government subsequently moved *in limine* to preclude Johnson from presenting evidence that related to a duress defense. The court granted the government's motion *in limine*, but accorded

---

**1.** Federal Rule of Criminal Procedure 11(a)(2) states:

> With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

Johnson the opportunity to make an offer of proof regarding his duress defense.

On May 17, 1984, each of the appellants pled guilty to a single count of violating 18 U.S.C. § 751 (escape from prison). They pled conditionally, reserving their rights to appeal from the district court's adverse rulings on their pretrial motions. Appellant Johnson also reserved his right to appeal the district court's ruling granting the government's motion *in limine* to preclude a duress defense.

On July 2, 1984, the district judge sentenced each appellant to five years in prison; the sentences were ordered to run consecutively with sentences appellants already were serving.

## DISCUSSION

### 1. *Outrageous Government Conduct.*

Appellants contend that the district court erred in denying their pretrial motion to dismiss their indictments due to "outrageous government conduct." In support of this motion, appellants Johnson and Sears filed declarations alleging that: (a) several months before their escape, prison authorities placed them in administrative segregation for planning to escape with the use of a prison truck; (b) prison authorities were aware of the plan to escape and took no steps to prevent it; (c) although prison authorities initially changed Sears' prison employment from the mess hall in order to hinder his access to the escape truck, they later returned him to mess hall duty; and (d) prison authorities assisted in and "perhaps encouraged" the escape attempt. The government refuted the appellants' allegations and supported its position by providing declarations of prison employees and by providing the court *in camera* with information that related to current inmates and Bureau of Prison security measures. In denying appellants' motion, the district court ruled that, even taking their allegations as true, the alleged conduct of the government fell "fatally short" of the kind of creative, direct and continuous involvement required to sustain the outrageous government conduct defense.

■ The district court's denial of a motion to dismiss an indictment based on outrageous government conduct involves a question of law. *United States v. Ramirez*, 710 F.2d 535, 539 (9th Cir.1983). As such, we review it *de novo*. *See United States v. McConney*, 728 F.2d 1195, 1200–04 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ The due process clause of the Fifth Amendment may bar a conviction where the government's involvement in a criminal enterprise grossly outrages and shocks the universal sense of justice. *See United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973); *United States v. Bagnariol*, 665 F.2d 877, 881–82 (9th Cir.1981) (per curiam), *cert. denied*, 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). The involvement of the government must be *"malum in se"* or the government must have "engineered and directed the criminal enterprise from start to finish." *United States v. Gonzales*, 539 F.2d 1238, 1239–40 (9th Cir.1976) (per curiam). Only such egregious conduct constitutes a due process violation.

The few convictions that courts have reversed on the ground of outrageous government involvement have resulted from government conduct that rises to a level of "creative activity." *See Greene v. United States*, 454 F.2d 783, 787 (9th Cir. 1971) (government agent helped establish and then sustained criminal operations and was the only customer of the illegal bootlegging operation he helped create).

■ In the present case, the outrageous government conduct defense fails. The government did not "create" the offense charged, *see Greene*, 454 F.2d at 787, nor did it "engineer and direct the criminal enterprise from start to finish." *See Gonzales*, 539 F.2d at 1239–40. The prison authorities neither devised the plan to escape nor provided the weapons used in the escape. They did not facilitate access to the truck nor did they authorize its use. We there-

fore find that the district court was correct in ruling, as a matter of law, that the conduct of the prison authorities was insufficient to constitute grounds for dismissal because of outrageous government conduct.

### 2. *Discovery Requests.*

The district court denied three discovery requests of appellants Johnson and Sears for material to be used to support their motion to dismiss. The requests were for the identity of a government informant, the substance of any communication of such confidential informant, the identity of persons to whom such information was relayed, records concerning prison security measures, and other information regarding prison authorities' prior knowledge of the escape plan.

The district court took appellants' discovery motions under submission. The government responded to these motions and provided the court, *in camera*, with security-sensitive information concerning Bureau of Prison security procedures and informant information. The government only opposed appellants' requests for informant information and prison security measures. The district court found that the informant information and the security-sensitive information about escape prevention measures were not sufficiently material to the appellants' case to warrant putting inmate safety and prison security in jeopardy. Appellants contend that the district court erred in denying their discovery motions.

■ The scope of discovery is within the discretion of the district court. We review a district court's discovery ruling for abuse of discretion. *United States v. Clegg*, 740 F.2d 16, 18 (9th Cir.1984); *United States v.*

*Duncan*, 693 F.2d 971, 979 (9th Cir.1982), *cert. denied*, 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983).

■ The district court correctly balanced the competing interests in reaching its discovery ruling in the present case. *See United States v. Mills*, 641 F.2d 785, 790 (9th Cir.), *cert. denied*, 454 U.S. 902, 102 S.Ct. 409, 70 L.Ed.2d 221 (1981); *United States v. Lanci*, 669 F.2d 391, 393 (6th Cir.), *cert. denied*, 457 U.S. 1134, 102 S.Ct. 2960, 73 L.Ed.2d 1350 (1982). After reviewing the disputed evidence *in camera*, the court concluded that the information sought to be discovered was not sufficiently material to overcome the government's compelling interests in inmate safety and prison security. The district court, therefore, properly exercised its discretion by considering the competing interests and denying the discovery requests here at issue.

### 3. *Duress Defense.*

■ Appellant Johnson indicated to the government that he contemplated presenting a duress defense to the escape charge. The government moved *in limine* to preclude the defense unless Johnson could make a minimal showing of a valid duress defense.[2] After considering Johnson's offers of proof, the district court granted the government's motion *in limine*.

Johnson contends that his offers of proof were sufficient to raise a factual dispute as to each element of the duress defense, and that, therefore, his defense should have been heard at trial.

Johnson submitted oral and written offers of proof. At a pretrial hearing, he testified *in camera*, under oath, that when he initially declined to participate in the planned escape, another inmate threatened him by putting a knife to his neck and

---

**2.** It was appropriate for the district court to rule on the adequacy of a duress defense prior to trial. As the Supreme Court stated in *United States v. Bailey*, 444 U.S. 394, 415, 100 S.Ct. 624, 637, 62 L.Ed.2d 575 (1980), "precisely because a defendant is entitled to have the credibility of his testimony, or that of witnesses called on his behalf, judged by the jury, it is essential that the testimony given or profferred meet a minimum

standard as to each element of the defense so that, if a jury finds it to be true, it would support an affirmative defense—here that of duress or necessity." *See also, United States v. Peltier*, 693 F.2d 96, 98 (9th Cir.1982) (per curiam); *United States v. Bryan*, 591 F.2d 1161, 1162 (5th Cir.1979) (per curiam), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1013, 62 L.Ed.2d 751 (1980).

chest. He further stated that appellant Sears told him that if he refused to drive the escape truck, he would be killed. Once forced inside the truck, Johnson testified that he "tried to jam the gears on the truck, tried to stop the truck from running, and [appellant Sears] hit [him] in the back of the neck and ordered [him] to get it moving now."

Johnson further testified that when the truck was stopped under small-arms fire from the guards, bullets and glass were flying everywhere, dust covered the area, no one could see, and he ran away from the truck not to escape but to protect himself. Johnson testified that before he was apprehended, he never attained a position of safety from which he could surrender to authorities.

■ Whether a defendant has made a threshold showing as to each element of the duress defense is a question of law and is reviewed *de novo*. *United States v. Contento-Pachon*, 723 F.2d 691, 693 (9th Cir.1984).

■ To establish a duress defense in an escape from confinement prosecution, a prisoner must establish the existence of the following requirements:

1. That the threat and fear which the threat caused were immediate and involved death or serious bodily injury;

2. That the fear was well-grounded;

3. That there was no reasonable opportunity to avoid or escape the threatened harm; and

4. That the defendant submitted to proper authorities after attaining a position of safety.

*United States v. Peltier*, 693 F.2d 96, 98 (9th Cir.1982) (per curiam).

■ In cases such as the present, where the defendants were caught in the act of escaping and were not at large for a significant period of time, the fourth *Peltier* requirement is inapplicable. Defendants cannot show that they have turned themselves in since they had no opportunity to do so. Consequently, courts have formu-

lated an alternative to the fourth requirement set out in *Peltier* for prisoners caught in the act of escaping. Instead of demonstrating an effort to return to custody, these defendants would have to show that they intended to surrender had the escape succeeded. *United States v. McCue*, 643 F.2d 394, 396 (6th Cir.), *cert. denied*, 451 U.S. 992, 101 S.Ct. 2334, 68 L.Ed.2d 853 (1981); *United States v. Caldwell*, 625 F.2d 144, 148 (7th Cir.1980), *cert. denied*, 450 U.S. 1002, 101 S.Ct. 1712, 68 L.Ed.2d 205 (1981); *United States v. Boomer*, 571 F.2d 543, 545 (10th Cir.), *cert. denied*, 436 U.S. 911, 98 S.Ct. 2250, 56 L.Ed.2d 411 (1978).

Johnson clearly made a sufficient offer of proof concerning the first three *Peltier* requirements. With respect to the fourth, the district court applied the alternative requirement, i.e., that he show his intention to resubmit to authorities. The court concluded that Johnson failed to comply with this alternative requirement. In its memorandum of decision the court stated, "[N]otably absent was *any* statement with respect either to his intention to resubmit to authorities or to any acts on his part from which an inference could be drawn that he had so intended." We disagree with the court's conclusion. After examining the offers of proof, and giving full credence to Johnson's statements, as did the district court, we find that Johnson sufficiently complied with the alternative to *Peltier's* fourth requirement.

■ Johnson's offers of proof contain a sufficient showing of his intent to surrender to authorities had the escape succeeded to enable him to present a duress defense at trial. Johnson's oral and written offers of proof support his assertions that he originally did not want to participate in the escape and was threatened into doing so, that he tried to stop the truck by jamming the gears during the escape attempt, and that once the truck stopped he only ran to protect himself. These assertions raise inferences that Johnson did not intend to escape and that he intended to surrender to

prison authorities when he reached a position of safety. We therefore find that Johnson made a sufficient offer of proof to enable him to present a duress defense at a trial.[3]

### 4. *Johnson's Request to Represent Himself.*

Appellant Johnson claims that the district court violated his Sixth Amendment right to self-representation when it denied his demand to appear as his own attorney in conjunction with his retained counsel. His request was primarily for the purpose of making a statement relevant to his duress defense, which the trial court permitted him to make *in camera.*

 A criminal defendant does not have an absolute right to serve as co-counsel. *United States v. Halbert,* 640 F.2d 1000, 1009 (9th Cir.1981) (per curiam). Whether to allow hybrid representation, where the accused assumes some of the lawyer's functions, is within the sound discretion of the judge. *See United States v. Kimmel,* 672 F.2d 720, 721 (9th Cir.1982). Here, the district court did not abuse its discretion in denying Johnson's motion for hybrid representation.

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.

CYNTHIA HOLCOMB HALL, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's analysis of the outrageous government conduct, discovery request, and representation issues. I dissent, however, from the majority's analysis of the duress issue.

Morris Lynn Johnson claims that he participated in the unsuccessful escape attempt under duress. Johnson has a history of participation in unsuccessful escape attempts. Johnson was captured further from the garbage truck used in the escape

than any of the other escapees, and initially resisted capture. In spite of numerous warnings by the district court regarding the insufficiency of his offer of proof, Johnson failed to produce any evidence that he intended to resubmit to the authorities had he successfully escaped.

On March 16, 1984 the government filed a motion *in limine* regarding the possible presentation of a duress defense by any of the defendants. None of the defendants responded to the motion. On April 2, 1984 the district court issued a tentative ruling which specifically noted the absence of any showing that defendants intended to surrender once free of the threat of death or serious bodily harm. After argument on the tentative ruling the court granted the government's motion subject to further submissions by Johnson.

On April 12, 1984 Johnson made an offer of proof regarding the duress defense. On April 30, 1984 the district court advised Johnson that it still considered the offer of proof insufficient, but that further supplemental materials would be considered. On May 4, 1984 Johnson filed a supplemental offer of proof. Further argument was heard on May 7, 1984. The district court started the hearing by informing Johnson and his counsel that Johnson's offer of proof was still insufficient as to Johnson's intent to resubmit to the authorities. Johnson's offer of proof was supported by Sears' counsel's offer that Sears would testify that Sears threatened Johnson before Johnson agreed to participate in the escape attempt. The district court specifically inquired whether Sears' testimony would relate to conduct after the attempted escape failed. Sear's counsel responded that the testimony would support Johnson's claim that the firing continued after the truck had stopped and that Johnson may have been running to protect himself.

On May 17, 1984 Johnson was given an opportunity to further supplement his offer of proof on the duress defense through *in*

---

**3.** Contrary to the dissent's assertion, the court's opinion does not eliminate the intent element of the duress defense. Our opinion simply recog-

nizes that evidence relevant to prove one element of the duress defense may also be relevant to prove a different element.

*camera* testimony. Johnson testified that he participated in the escape because he was threatened with a knife, that he tried to jam the gears of the truck during the escape but was forced to continue driving, and that the conditions after the truck stalled during the escape attempt were such that he ran from the truck in fear for his safety.

Conspicuously absent from Johnson's two written offers of proof, Johnson's testimonial offer of proof, and the offer of proof through Sear's counsel is any statement that Johnson intended to resubmit to authorities had the escape been successful.

I agree with the majority's characterization of the first three *Peltier* requirements, and with the majority's conclusion that Johnson has made a sufficient offer of proof as to these elements. I also agree with the majority's adoption of the alternative fourth element for unsuccessful escape cases. *See United States v. McCue*, 643 F.2d 394, 395–96 (6th Cir.), *cert. denied*, 451 U.S. 992, 101 S.Ct. 2334, 68 L.Ed.2d 853 (1981); *United States v. Trapnell*, 638 F.2d 1016, 1030 (7th Cir.1980). Under this approach an escapee who does not reach a position of safety must demonstrate that he intended to resubmit to authorities had the escape succeeded. *McCue*, 643 F.2d at 396; *Trapnell*, 638 F.2d at 1030. The problem with the majority's opinion is that the majority infers an intent to resubmit from evidence which goes to *other elements* of the duress defense thereby eliminating the intent to resubmit element from the duress defense.

Intent to resubmit to authorities is an essential element of the duress defense in escape cases because of the continuing nature of the escape offense. In *United States v. Bailey*, 444 U.S. 394, 412–13, 100 S.Ct. 624, 635–36, 62 L.Ed.2d 575 (1980), the Supreme Court stated:

> [S]everal considerations lead us to conclude that, in order to be entitled to an instruction on duress or necessity as a defense to the crime charged, an escapee must first offer evidence justifying his continued absence from custody as well

as his initial departure and that an indispensable element of such an offer is testimony of a bona fide effort to surrender or return to custody as soon as the claimed duress or necessity had lost its coercive force. (footnote omitted)

By establishing an absolute requirement that the escapee resubmit to authorities upon reaching a position of safety, *Bailey* recognizes the relationship between the duress defense and the *mens rea* element of prison escape offenses. Because escape is a continuing offense, *id.* at 413–14, 101 S.Ct. at 636–37, the prisoner who is forced to escape against his will by threats or violence and then takes advantage of his situation to remain at large is guilty of escape the same as the prisoner who intended to escape all along. *See United States v. Woodring*, 464 F.2d 1248, 1250 (10th Cir.1972) (prisoner taken by abduction then failed to return); *cf. Chandler v. United States*, 378 F.2d 906, 907–08 (9th Cir.1967) (intoxication defense to escape untenable where prisoners were not recaptured until after intoxication had ceased). The duress defense is available only when it negates the *mens rea* element of the escape offense during and after the physical departure from prison.

The intent to resubmit element serves the same purpose in an unsuccessful escape as the requirement that the prisoner actually resubmit to authorities serves in a successful escape. The duress defense is available only if the prisoner claims that he lacked the intent to escape when the escape took place *and* that he lacked the intent to remain at large had the escape succeeded. Those courts which have applied *Bailey* in unsuccessful escape cases have recognized the intent to resubmit to the authorities as an indispensable element of the duress defense. *McCue*, 643 F.2d at 395–96; *United States v. Caldwell*, 625 F.2d 144, 147–48 (7th Cir.1980), *cert. denied*, 450 U.S. 1002, 101 S.Ct. 1712, 68 L.Ed.2d 205 (1981). No matter how great the evidence of threats or violence against the prisoner, the duress issue should not go to the jury if the prisoner does not make a threshold showing

that he would have returned to custody had the escape been successful.

The majority correctly notes that Johnson must make a minimum showing as to all four *Peltier* requirements. However, the majority then eliminates the intent to resubmit requirement from this case. The majority points to Johnson's testimony that he was threatened into participating in the escape, that he jammed the gears of the truck during the escape, and that he only ran from the truck to protect himself. The majority then concludes that these assertions *"raise inferences* that Johnson did not intend to escape and that he intended to surrender to prison authorities when he reached a position of safety." (Emphasis added.)

The majority ignores the fact that Johnson never claimed an intent to resubmit to authorities in spite of two specific statements by the district court that his offer of proof was insufficient in this respect. The intent to resubmit to authorities is indispensable because of the continuing nature of an escape offense. It cannot be presumed from the evidence of threats against the defendant, or from evidence which indicates the defendant's unwilling participation in the escape or a desire to protect himself once the escape is failing. The defendant must make a threshold showing that he would have returned to custody had the escape been successful. The majority's inference of an intent to resubmit to authorities on the facts of this case is inconsistent with the importance of this element in the duress inquiry. When the defendant has not claimed that he had the requisite intent to resubmit to authorities, we should not take it on ourselves to supply such an intent.

Even if Johnson had claimed an intent to resubmit to the authorities, I would not accept the majority's conclusion that the current record is sufficient to support such a claim. Where the evidence before the district court is inconsistent with a claimed intent to resubmit, the district court need not present the duress issue to the jury. *Trapnell,* 638 F.2d at 1030 (disregarding claimed intent to resubmit to authorities where defendant had made arrangements to have water, food, guns and maps provided for his use after escape); *cf. United States v. Garza,* 664 F.2d 135, 142 (7th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1620, 71 L.Ed.2d 854 (1982) (successful escape case finding claimed intent to resubmit to the authorities in the future inconsistent with hostile greeting and gunfire against police at time of capture). The majority fails to address the government's assertions that Johnson fled further from the truck than any of the other escapees, and that Johnson initially resisted capture. Also notably absent from the record is any evidence that Johnson indicated an intent to surrender during his flight or, upon capture.

The district court was correct in finding that Johnson failed to present *any* evidence of his intent to resubmit to authorities had the escape been successful. I would affirm.