968 F.2d 1222
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America Plaintiff-Appellee,
v.
Roberto MARTINEZ, Defendants-Appellants.
 No. 90-50260.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 4, 1991.
Decided July 20, 1992.
 
 Before JAMES R. BROWNING, BOOCHEVER and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Roberto Martinez appeals his jury convictions for conspiracy and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). He contends that the district court erred in excluding his proffered evidence of a defense of duress. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 FACTUAL BACKGROUND
 
 3
 In March 1988, DEA Special Agent Gonzalez began an investigation into cocaine trafficking. Posing as a narcotics dealer, Gonzalez engaged in a series of telephone conversations with Roberto Martinez (Martinez) and Jorge Martinez (Jorge) regarding a proposed sale of cocaine to Gonzalez in Los Angeles. On May 10 and 11, 1988, Martinez and his partner, Alvaro Pelaez, respectively arrived in Los Angeles from Miami and discussed the cocaine transaction with Gonzalez and Special Agent Ceren. The parties agreed that Special Agent Gonzalez was to pay $550,000 for 50 kilograms of cocaine on May 12, 1988, and that if all went well, another 50 kilograms would be supplied that afternoon.
 
 
 4
 On May 12, 1988, the agents drove to various pay phones with Martinez and Pelaez so that Pelaez could contact his cocaine suppliers. Pelaez instructed Special Agent Gonzalez to drop him off at a Safeway parking lot and to leave a "load car" in that lot. A DEA agent so complied. Officers observed Juan Carlos Romero, Jose Bantula, and Rodrigo Perez drive through the parking lot in a Jaguar. Romero, Pelaez, Bantula, and Perez met and appeared to be talking by the car. Perez then drove off in the load car.
 
 
 5
 Pelaez returned to the restaurant, where the DEA agents and Martinez were waiting. He reported that he had met his "gente" or people, and that they had taken the load car to get the first 50 kilograms. The agents and Martinez then went to the Safeway to await delivery of the cocaine.
 
 
 6
 During this time, Perez had driven the load car into the driveway of a Palos Verdes home. When the load car re-emerged, police stopped the car, arrested Perez, and found 50 kilograms of cocaine in the trunk. The police also arrested Martinez and Pelaez who were waiting at the Safeway for the cocaine to be delivered. That night, the police searched the Palos Verdes residence from which Perez had obtained the cocaine. The police found 172 kilograms of cocaine in a bedroom closet in packages identical to the packages of cocaine found in the load car.
 
 
 7
 Defendants Jorge, Perez, and Pelaez eventually pleaded guilty. On February 23, 1990, a jury found Martinez, Bantula, Romero, Avana, and Arias guilty on all counts of conspiracy and possession with intent to distribute cocaine. Martinez was sentenced to a prison term of 188 months and to a term of supervised release. This timely appeal followed.[1]
 
 DISCUSSION
 
 8
 Martinez challenges the district court's refusal to allow him to present a duress defense to the jury. According to the offer of proof, Martinez became involved in marijuana dealing in the Miami area after government informant Ramon Lopez encouraged him to do so. Acting as a middleman, Martinez arranged for a Columbian supplier named Mika to furnish him with 200 pounds of marijuana, for the eventual sale of the narcotics to two buyers. Unbeknownst to Martinez, however, this transaction was part of an F.B.I. sting operation and Mika was never paid for the marijuana shipment. As a result, Mika allegedly threatened to kill Martinez if he did not pay the $40,000 owed for the marijuana and reminded Martinez that he knew the location of Martinez' family. Consequently, Martinez claims, he accepted Lopez' offer to engage in this cocaine transaction to satisfy the debt arising from the prior marijuana transaction.
 
 
 9
 Whether a defendant has made a threshold showing of each element of the duress defense is a question of law to be reviewed de novo. United States v. Williams, 791 F.2d 1383, 1388 (9th Cir.), cert. denied, 479 U.S. 869 (1986). To present a defense of duress, a defendant must establish a prima facie case of the following elements: 1) an immediate and illegal threat of death or serious bodily harm, 2) a well-grounded fear that the threat would be carried out, and 3) no reasonable opportunity to escape the threatened harm. United States v. Kinslow, 860 F.2d 963, 965-66 (9th Cir.1988), cert. denied, 493 U.S. 829 (1989). If the evidence is insufficient as a matter of law to support a duress defense, the trial court should exclude that evidence. United States v. Contento-Pachon, 723 F.2d 691, 693 (9th Cir.1984).
 
 
 10
 Here, Martinez did not offer sufficient evidence regarding the immediacy of the threat. "The element of immediacy requires that there be some evidence that the threat of injury was present, immediate, or impending." Contento-Pachon, 723 at 693. In this case, the threat of injury was not sufficiently immediate. Two months elapsed between the time the threats were made and the time of Martinez' offense. An elapse of time significantly shorter than two months has often been considered not sufficiently immediate a threat to allow a jury to hear evidence on the duress issue. See, e.g., United States v. Gordon, 526 F.2d 406, 408 (9th Cir.1975) (no evidence of immediacy or inescapability where defendant was never physically restrained and was outside the presence of undercover agents for five hours). Nor is there any evidence that Martinez was under constant surveillance during this two month period. Cf. Contento-Pachon, 723 F.2d at 694. Because of the result we reach, we need not consider whether the duress defense is ever available to one who has continued to participate in a criminal endeavor in the same role as that which he previously voluntarily undertook.
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Bantula, Romero, Avana, and Arias also appeal their convictions, and Bantula appeals his sentence as well. We address these appeals in a separate unpublished disposition