Edmund M. ABORDO, Plaintiff,

v.

STATE OF HAWAII, et al., Defendants.

Civil No. 94–00514 ACK/BMK.

United States District Court,
D. Hawai'i.

July 1, 1996.

Edmund M. Abordo, Aiea, HI, P. Se.

Steven S. Michaels, Office of the Attorney General—State of Hawaii, Honolulu, HI, Michael S. Vincent, Office of the Attorney General—State of Hawaii, Honolulu, HI, for State of Hawaiʻi, Department of Public Safe-ty, Nalani Ching, R. Tenn, T. Palau, Guy Hall, John Smyth, George W. Sumner.

Karen A. Essene, Honolulu, HI, for Amicus Curiae American Civil Liberties Union of Hawaiʻi.

Michael Chun, United States Attorneys Office, Honolulu, HI, Janis C. Kestenbaum, U.S. Department of Justice, Washington, DC, for United States of America.

### ORDER MODIFYING IN PART AND ADOPTING IN PART MAGISTRATE'S FINDINGS AND RECOMMENDATION FILED APRIL 23, 1996 AND GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

KAY, Chief Judge.

### BACKGROUND

On July 6, 1995, plaintiff Edmund M. Abordo, an inmate at Halawa Correctional Facility ("HCF"), filed a 42 U.S.C. § 1983 civil rights complaint against the State of Hawaii and various prison officials (collectively, "Defendants") alleging they violated the Religious Freedom Restoration Act ("RFRA")[1] and deprived him of his rights under the First, Fifth and Fourteenth Amendments to the United States Constitution when they cut his hair, pursuant to HCF's hair length regulation, over his objections. Plaintiff's complaint also alleges violations of state regulatory law as well as state tort claims of intentional infliction of emotional distress and negligence.

Plaintiff and Defendants brought a first set of cross-motions for summary judgment. By order filed August 25, 1995 modifying in part and adopting in part the Magistrate's findings and recommendation filed June 2, 1995, this Court denied Plaintiff's motion and granted in part and denied in part Defendants' motion, as a result of which it ruled there were two remaining claims for trial:

(1) Plaintiff's request for a declaration that Defendants' actions violated his right to freely exercise his religion pursuant to the standard set forth in the RFRA.

(2) Plaintiff's request for a declaration that Defendants' actions violated the Equal

---

**1.** Pub.L. No. 103–141, 107 Stat. 1488 (1993), *codified at* 42 U.S.C. § 2000bb.

Protection Clause and for monetary damages against Defendants Ching, Tenn, Palau and Hall in their individual capacities based on any violation of Plaintiff's right to Equal Protection.

Order filed August 25, 1995 at 32 (published as *Abordo v. State of Hawaii*, 902 F.Supp. 1220, 1234 (D.Haw.1995)).

Plaintiff and Defendants then brought a second set of cross-motions for summary judgment. In addition, Plaintiff filed a "motion for collateral estoppel doctrine, res judicata, final decision rule." On April 23, 1996, Magistrate Kurren issued a Findings and Recommendation ("F & R") that Defendants' motion for summary judgment be granted in part and denied in part, that Plaintiff's cross-motion for summary judgment be denied, and that Plaintiff's "motion for collateral estoppel" be denied.

Specifically, Magistrate Kurren recommended (1) that Defendants' motion as to Plaintiff's RFRA claim be denied because Defendants have failed to demonstrate there is no material dispute over whether the HCF hair length regulation is the "least restrictive means" to further the State's compelling interests in prison security, safety and order; and (2) that Defendants' motion as to Plaintiff's Equal Protection claim be granted because Defendants have demonstrated a legitimate nondiscriminatory (including gender neutral) reason why the hair length policy at HCF differs from that at WCCC (disparity in security concerns), and Plaintiff has failed to present any evidence raising a genuine triable issue of illegitimate discrimination.

On May 2, 1996, Plaintiff objected to the Magistrate's recommendation regarding his Equal Protection claim, attaching to his objection a number of "Grievance Entries" pertaining to inmates who were forced to cut their hair against their wishes.

On May 3, 1996, Defendants objected to the Magistrate's recommendation regarding Plaintiff's RFRA claim, on the grounds the Magistrate failed to give due deference to the "expert judgment" of HCF prison officials

that their hair length regulation constitutes the "least restrictive means" under RFRA for furthering the State's compelling interests, citing the Eighth Circuit's recent decision in *Hamilton v. Schriro*, 74 F.3d 1545 (8th Cir.1996).[2]

For the following reasons, the Court MODIFIES IN PART AND ADOPTS IN PART the Magistrate's F & R and GRANTS summary judgment in favor of Defendants on all of Plaintiff's claims.

### STANDARD OF REVIEW

■ Any party may object to a magistrate's case dispositive proposed order, findings, or recommendation. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 404–2. The district court must make a *de novo* determination of those portions of the magistrate's findings to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate. *Id. De novo* review means the court must consider the matter anew, the same as if it had not been heard before and as if no decision previously had been rendered. *Ness v. Commissioner*, 954 F.2d 1495, 1497 (9th Cir.1992). Thus, although the district court need not hold a *de novo* hearing, the court's obligation is to arrive at its own independent conclusion about those portions of the magistrate's findings or recommendation to which objections are made. *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir.1989).

■ The court may accept those portions of the magistrate's findings and recommendation which are not objected to if it is satisfied that there is no clear error on the face of the record. *See Campbell v. United States District Court*, 501 F.2d 196, 206 (9th Cir.1974).

### DISCUSSION
### I. PLAINTIFF'S OBJECTIONS

Plaintiff contends the "Grievance Entries" he submits with his objection "show evidence of discrimination with intent" so as to raise a

---

**2.** It appears *Hamilton* was neither brought to the Magistrate's attention previously nor considered by him in formulating his F & R.

genuine triable issue precluding summary judgment against him on his Equal Protection claim. Upon reviewing the entries, the Court does not agree.

■ At most, the entries indicate that certain inmates were forced, against their wishes, to cut their hair to conform to HCF's hair length regulation. While this may show "intentional discrimination" against inmates with long hair, such discrimination fails to state an Equal Protection violation because HCF's hair length regulation "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *see Allen v. Sakai*, Civil No. 86–00577 ACK (orders filed March 2, 1989 and August 2, 1993).

■ Plaintiff's Equal Protection claim based on gender discrimination likewise is meritless. Defendants have submitted evidence that the difference in hair length policy between HCF and WCCC is due to the disparity in security concerns between the two facilities and not because of any illegitimate discrimination on the basis of gender. Plaintiff has submitted no evidence to the contrary. The Court accordingly finds there is no genuine triable issue of any Equal Protection violation based on gender. *See, e.g., Diaz v. Collins*, 872 F.Supp. 353, 358 n. 4 (E.D.Tex.1994) (rejecting claim that disparate hair regulations for male and female inmates violates equal protection).

■ Finally, in its prior order, this Court noted Plaintiff might support an Equal Protection claim based on religious discrimination with allegations that Hawaiians or members of other "religious" sects are permitted to have long hair whereas Plaintiff, an alleged Native American, is not. Because

3. The Court rejects Plaintiff's contention in his "motion for collateral estoppel" that because the Court previously ruled that "[Plaintiff's] allegations could support an equal protection claim," Defendants now are precluded from moving for summary judgment on that claim. Order filed August 25, 1995 at 1226. First, the Court's earlier ruling was based on Plaintiff's allegations. Second, the Court did not limit the scope of the parties' second set of summary judgment motions.

4. Plaintiff here instead alleges that (1) long hair is religiously significant to Native Americans be-

Plaintiff has presented absolutely no evidence to support such an allegation, however, Defendants are entitled to summary judgment on this particular claim as well. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (non-moving party may not avoid summary judgment by relying on the mere allegations in his pleadings).

The Court accordingly ADOPTS the Magistrate's recommendation that summary judgment be granted in favor of Defendants on all of Plaintiff's Equal Protection claims.[3]

## II. DEFENDANTS' OBJECTIONS

Defendants object that summary judgment should be granted in their favor on Plaintiff's RFRA claim because HCF's hair length regulation is the "least restrictive means" for furthering the State's compelling interests in prison security, safety and order, citing *Hamilton v. Schriro*, 74 F.3d 1545 (8th Cir. 1996). *See also United States v. Williams*, 791 F.2d 1383, 1387 (9th Cir.1986) (government has "compelling interests in inmate safety and prison security").

■ In *Hamilton v. Schriro*, 74 F.3d 1545 (8th Cir.1996), Hamilton, a Native American inmate, brought suit alleging, *inter alia*, that prison officials violated RFRA by requiring him to cut his hair to conform to the facility's hair length regulation prohibiting hair length beyond the collar for male inmates. *Id.* at 1547. At a two day hearing held by the district court, Hamilton testified that American Indian males believe that their hair is a gift from the Creator and is to be cut only when someone close to them dies. *Id.* at 1548.[4]

In response,

cause it symbolizes manhood and personal spiritual strength; (2) his "hair was to be used as a sacrifice to render answered prayers;" and (3) long hair is significant to Christianity by being Christ-like. *See* Order filed August 25, 1995 at 1225.

Plaintiff thus apparently alleges desired adherence to both "Native American" *and* "Christian" religious tenets. *See* Defendants' Reply in Supp. of Mot. for Summ. J., Exh. K (Abordo Depo.) at 39 (in addition to the Native American religion, plaintiff claims also to practice the religion known as "Nazarene," the "Children of God," or

[p]rison officials testified that long hair poses a threat to prison safety and security. Stephen Long, the Assistant Director of Adult Institutions for the Missouri Department of Corrections, testified that inmates could conceal contraband, including dangerous materials, in their long hair. Long testified that without the hair length regulation, prison staff would be required to perform more frequent searches of inmates, which could cause conflicts between staff and inmates. Searching an inmate's long hair would be difficult, especially if the inmate's long hair were braided. Long also testified that the prison had tried to control gangs by not allowing them to identify themselves through colors, clothes, or hair carvings. He testified that exempting American Indians from the hair length regulation could cause resentment by the other inmates. He concluded that there was no alternative to the hair length policy because only short hair can easily be searched and remain free of contraband. Finally, Long noted that long hair could also cause problems with inmate identification.

*Id.* at 1548.

In analyzing Hamilton's RFRA claim, the Eighth Circuit first assumed the hair length regulation would substantially burden his exercise of his religion. *Hamilton,* 74 F.3d at 1552. The court then noted the district court's acknowledgment that " 'safety, security and cost concerns may be shown to be compelling governmental interests in the prison setting,' " *id.* at 1552, and stated that

"[u]nder RFRA, the prison officials bear the burden of demonstrating that the regulation is the least restrictive means of achieving a compelling interest." *Id.*

Although the district court in *Hamilton* had held that the prison regulations at issue were not the least restrictive means of achieving the compelling interest of prison security and safety, the Eighth Circuit disagreed and reversed. *Hamilton,* 74 F.3d at 1552. The appellate court first stated that "[p]re-[*O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) ] case law and RFRA's legislative history indicate that the applicable test [under RFRA] must be construed in the prison setting, giving due deference to the expert judgment of prison administrators." *Id.;* see also *Mack v. O'Leary,* 80 F.3d 1175, 1180 (7th Cir.1996) (finding nothing in formulation of test under RFRA "or in the history of the statute, to suggest that Congress intended to undermine the judicial policy of deference to prison authorities on issues of prison discipline") (citing *Hamilton* ); *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974) ("[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.... Moreover, where state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities.") (quoted in *Hamilton*).[5]

The Eighth Circuit in *Hamilton* then held that the prison officials in that case had

<hr>

"The Family"); *see also* Defendants' Mot., Exh. J at 9 (HCF incident report stating that Plaintiff, prior to receiving his haircut on February. 1, 1994, stated he was a "Rastafarian").

For purposes of the instant motions only, the Court will assume that HCF's hair length regulation "substantially burdens" Plaintiff's exercise of his religion, whatever that may be. *Cf. Bryant v. Gomez,* 46 F.3d 948, 949 (9th Cir.1995) (inmate failed to show state "substantially burdened" his exercise of religion "because [he] has not provided any facts to show that the activities which he wishes to engage in are mandated by [his] religion").

**5.** As the Senate Report accompanying RFRA explains:

The committee does not intend the act to impose a standard that would exacerbate the

difficult and complex challenges of operating the Nation's prisons and jails in a safe and secure manner. Accordingly, the committee expects that the courts will continue the tradition of giving due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.

S.Rep. No. 103–111 at 8–9, 103d Cong., 1st Sess. (1993) U.S.Code Cong. & Admin.News 1897–1899; *see also* H.R.Rep. No. 103–88 at 6, 103d Cong., 1st Sess. (1993) U.S.Code Cong. & Admin.News 1895 ("Ensuring the safety and orderliness of penological institutions [has] been recognized as [a] governmental interest[ ] of the highest order.").

"demonstrated that the prison regulation and policy at issue are the least restrictive means of maintaining the prison's compelling interest in institutional safety and security." *Hamilton,* 74 F.3d at 1554. With respect to the hair length regulation, the court stated:

> [P]rison officials testified that prison security requires them to prevent inmates from concealing contraband in their long hair and identifying with a particular gang. The prison officials also testified that preventing male inmates from growing their hair longer than collar length is the least restrictive way to achieve that goal because no viable alternatives exist.

> It is more than merely "eminently reasonable" for a maximum security prison to prohibit inmates from having long hair in which they could conceal contraband and weapons. It is compelling. Further, it is important for prison administrators to prevent inmates from identifying with particular gangs through their hair style. The safety and security concerns expressed by prison officials were based on their collective experience of administering correctional facilities. These are valid and weighty concerns. Moreover, there is no viable less restrictive means of addressing these concerns. Therefore, we conclude that the district court erred in its interpretation and application of the least restrictive means prong of the compelling interest test in RFRA. The district court failed to give due deference to the prison officials' testimony that long hair presented a risk to prison safety and security and that no viable less restrictive means of achieving that goal existed.

*Id.* at 1554–55; *see also Phipps v. Parker,* 879 F.Supp. 734, 736 (W.D.Ky.1995) ("cutting inmates' hair short appears to be the only plausible way to meet these safety concerns, and thus satisfies the [least restrictive means] requirement") (cited in *Hamilton* );

*Diaz v. Collins,* 872 F.Supp. 353, 359 (E.D.Tex.1994) ("The potential of hiding contraband in long hair cannot be vitiated except through a regulation that hair be kept short.") (cited in *Hamilton*).

The Court finds the reasoning in *Hamilton, Phipps* and *Diaz* persuasive. The evidence that Defendants submitted with their motion for summary judgment, like the testimony of the prison officials in *Hamilton,* establishes that long hair poses a threat to prison safety and security at HCF. A shoulder length or shorter hair length policy maintains the State's interest in prison safety and security because it makes it harder for inmates to hide contraband and weapons in their hair. Defendants' Mot., Sandin Decl. at ¶¶ 4–6.[6] Longer hair complicates and lengthens searches of inmates conducted pursuant to the facility's safety and security procedures. *Id.* at ¶ 7. This "gives rise[ ] to additional opportunities for confrontations between guards and staff, and increases the potential for violence." *Id.* at ¶ 7. The allowance of longer hair also facilitates gang membership, which is "a direct threat to the security of the prison, and to the safety of inmates and staff." *Id.* at ¶ 7. Longer hair also gives rise to a potential for more serious injuries in fights between inmates or between inmates and guards. *Id.* at ¶ 7. Finally, the hair length policy serves the States' interest in health and safety by minimizing the spread of lice and other infectious agents, accidents caused by long hair getting caught in doorways, and health hazards in kitchen work lines. *Id.* at ¶ 7; *see also Phipps v. Parker,* 879 F.Supp. 734, 736 (W.D.Ky.1995) (sanitation and other justifications "in conjunction with the safety and identification concerns, offer additional justification for the [facility] haircutting policy").

Defendants also have submitted testimony that there is no reasonable less restric-

---

**6.** Cinda Sandin presently holds the position of Residency Section Supervisor at HCF and has held various positions in the Department of Public Safety, State of Hawaii, and its predecessors, since 1983. Sandin Decl. at ¶ 1.

She states:

Halawa Correctional Facility, where plaintiff Edmund M. Abordo is housed, is the most secure correctional facility in the State of Hawaii. By law, HCF is charged with housing those inmates who have committed violent offenses, and who are otherwise considered high risks to the safety of the community. Mr. Abordo, who has been convicted during his lifetime of multiple violent felonies, is appropriately housed at HCF.

*Id.* at ¶ 2.

tive alternative to the facility's hair length regulation.[7] Defendants' Mot., Sandin Decl. at ¶ 6. Exempting certain individuals or types of hair from the policy "would be perceived as arbitrary," causing resentment, and could be challenged as racially or otherwise discriminatory. *Id.* at ¶ 6. "[V]irtually any hair style that is shoulder length or longer, even with straight hair, is capable of concealing a shank or other deadly weapon." *Id.* at ¶ 6. Only short hair can be easily searched to ensure it remains free from weapons and contraband. The Court finds there is "no viable less restrictive means of achieving th[is] goal." *Hamilton,* 74 F.3d at 1555.

The Court agrees with Defendants that the *threat* alone to prison safety and security arising from allowing long hair at HCF is not an insufficient justification for a hair length regulation. *See Hamilton,* 74 F.3d at 1548; *Bell v. Wolfish,* 441 U.S. 520, 551 n. 32, 99 S.Ct. 1861, 1880 n. 32, 60 L.Ed.2d 447 (1979) ("Responsible prison officials must be permitted to take reasonable steps to forestall ... threat[s to security], and they must be permitted to act before the time when they can compile a dossier on the eve of a riot.")

(quoting *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 132–33, 97 S.Ct. 2532, 2541–42, 53 L.Ed.2d 629 (1977)). The Magistrate's F & R thus is modified in this respect. *See* F & R at 8.

Based on the evidence submitted by Defendants and the reasoning in *Hamilton,* the Court finds there is no genuine issue that HCF's hair length policy is "the least restrictive means of maintaining the prison's compelling interest in institutional safety and security," *Hamilton,* 74 F.3d at 1554, and that the policy therefore satisfies RFRA.[8] The Magistrate's F & R is modified accordingly.

With respect to the unobjected to matters in the F & R, upon reviewing the record, the Court is satisfied they are not clearly erroneous and thus adopts them. This Court's order filed August 25, 1995 ruling on the parties' first set of summary judgment motions hereby is REENTERED inasmuch as the requirements of *Klingele v. Eikenberry,* 849 F.2d 409 (9th Cir.1988), have been satisfied.

7. As *Hamilton* recognizes, there must be a reasonableness element to the "least restrictive means" requirement under RFRA. *See Hamilton,* 74 F.3d at 1555 ("[T]here is no *viable* less restrictive means of addressing these concerns.") (emphasis added) and 1555 n. 12 (citing *Diaz v. Collins,* 872 F.Supp. 353, 359 (E.D.Tex.1994) ("While other methods [other than a hair length policy] might be used, such as constantly searching inmates for contraband, such means would be *impractical* and just as likely to burden constitutional interests.") (emphasis added)); *Hamilton,* 74 F.3d at 1552 (cost concerns may be shown to be compelling governmental interests in the prison setting).

8. In support of his cross-motion for summary judgment and opposition to Defendants' motion, Plaintiff submitted the declaration of George E. Sullivan, who states that in his experience with the Oregon Department of Corrections, as the Warden of the Penitentiary of New Mexico at Santa Fe, and as Deputy Director for Operations of the Colorado Department of Corrections, and in his opinion, "there is simply no imaginable legitimate security nor safety reason to prohibit Native American inmates from attending their religious beliefs by wearing long hair." Sullivan Decl., filed February 9, 1996, at ¶ 13.

Sullivan's hyperbole undercuts any weight to which his declaration might otherwise be entitled, which in any event is none. Sullivan's

declaration indicates he has no experience with Hawaii prisons, and it does not appear he has even ever visited HCF. His declaration moreover is conclusory and unsupported by specific facts. It accordingly is insufficient to defeat summary judgment. *See Sheet Metal Workers' Int'l. Ass'n Local Union No. 359 v. Madison Indus., Inc., of Arizona,* 84 F.3d 1186 (9th Cir.1996) ("To raise a genuine issue sufficient to survive summary judgment, an affidavit must set forth specific facts tending to show the truth of the allegation.") (citing *Barnes v. Indep. Automobile Dealers Ass'n of California Health & Welfare Benefit Plan,* 64 F.3d 1389, 1396 n. 3 (9th Cir.1995) (statement opposing summary judgment insufficient to raise genuine issue where basis for or evidence supporting contention is not set forth) and *Richardson v. Oldham,* 12 F.3d 1373, 1378 (5th Cir.1994) (court may strike affidavit that lacks specific facts)); *Reynolds v. County of San Diego,* 84 F.3d 1162 (9th Cir.1996) (disregarding conclusory "expert" testimony not based on specific facts) (citing *United States v. Various Slot Machines on Guam,* 658 F.2d 697, 700 (9th Cir. 1981) ("in the context of a motion for summary judgment, an expert must back up his opinion with specific facts") and *Evers v. Gen'l Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985) (a party may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support his conclusory allegations)).

## CONCLUSION

Per the foregoing, the Court MODIFIES IN PART AND ADOPTS IN PART the Magistrate's findings and recommendation. Defendants' motion for summary judgment is GRANTED in its entirety and Plaintiff's is DENIED. Plaintiff's "motion for collateral estoppel" is DENIED. There are no remaining claims or parties. Judgment shall be entered in favor of Defendants.

IT IS SO ORDERED.